IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cr-00219** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **[1] ANDREA THOMAS** | ) | |
| **[2] CORY THOMAS** | ) | |
| **[3] CHRISTIAN SMITH** | ) | |
| **[4] NANCY GATES** | ) | |

## MEMORANDUM and ORDER

Before the court is defendants' Joint Motion to Dismiss (Doc. No. 57), which asks the court to (1) dismiss Count Three in its entirety; (2) strike overly inclusive language included in Count Three of the original Indictment (Doc. No. 3); and (3) strike reference to 18 U.S.C. § 3559(f)(2) from Count Three.

The government responded to the motion by, first, filing a Superseding Indictment (Doc. No. 76) that eliminates the overly inclusive language from Count Three to which the defendants object, thus mooting the defendants' second request.[1] The government filed a Response in opposition to the Motion to Dismiss, which also asserted that this request is now moot. (Doc. No.

[1] The defendants filed a Reply expressly asking the court to apply their Motion to Dismiss to the Superseding Indictment, which differs from the original Indictment only insofar as it removed the overly inclusive language (charging the defendants with conspiring to "commit offenses against the United States, including Kidnapping"). The government does not object to this request, and the court finds that the filing of the Superseding Indictment did not moot the other parts of the defendants' Motion to Dismiss. The court, therefore, deems the Motion to Dismiss as addressed to the Superseding Indictment.

83 at 3.) The defendants agree that the request is moot (Reply, Doc. No. 103 at 1), and the court will not address it further. However, the government opposes the other two requests for relief.

For the reasons set forth herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

The original Indictment was issued on October 15, 2025. (Doc. No. 3.) The Superseding Indictment, filed shortly after the Motion to Dismiss, amended only Count Three to remove the overly inclusive language to which the defendants' motion objected. (Doc. No. 76.) Like the original, the Superseding Indictment contains five counts charging four defendants, Andrea Thomas, Cory Thomas, Christian Smith, and Nancy Gates, with various crimes in connection with their treatment of "Minor Victim 1." Count One charges all four defendants with conspiracy to engage in the offense of stalking, in violation of 18 U.S.C. §§ 2261A(2) and 2261B, by installing and accessing a "blink camera" in Minor Victim 1's room.(Doc. No. 76 at 2.) Count Two charges Andrea Thomas with using an electronic communication service and electronic communication system "to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause, substantial emotional distress to Minor Victim 1." (*Id.* at 2–3.) Counts Four and Five charge Nancy Gates, only, with destroying or concealing evidence and then lying about it to the government. As relevant here, Count Three asserts that, "[b]eginning on or about October 1, 2020, and continuing through on or about January 28, 2025," all four defendants "knowingly and willfully conspired and agreed together, and with others known and unknown, to commit the offense of Kidnapping," in violation of 18 U.S.C. §§ 1201(c) and 3559(f)(2). (*Id.* at 3, 4.)

The Superseding Indictment contains virtually no supporting facts. The "Overt Acts" alleged in support of the kidnapping conspiracy charge appear primarily intended to support the "interstate commerce" element of the crime, *see* 18 U.S.C. § 1201(a)(1), and are as follows:

> 6. On or about September 2023, [2] CORY THOMAS and I.B. installed barbed wire in the attic above Minor Victim 1's room.
>
> 7. On or about October 2023, [2] CORY THOMAS installed metal panels on the walls of Minor Victim 1's room.
>
> 8. On or about January 31, 2024, [2] CORY THOMAS installed metals [sic] panels on the walls and plywood on the ceiling of Minor Victim 1's bedroom while Minor Victim 1 was forced to kneel on a piece of wood and stand on a piece of wood while holding weights in his hands. [3] CHRISTIAN SMITH brought tools to [2] CORY THOMAS while [2] CORY THOMAS installed the metal panels and plywood.
>
> 9. Beginning in or about June 2024, [1] ANDREA THOMAS and [2] CORY THOMAS began paying A.G. to babysit Minor Victim 1.
>
> 10. Beginning in or after June 2024, [4] NANCY GATES accessed the blink camera system in Minor Victim 1's room.
>
> 11. Between October 1, 2020, and January 28, 2025, [4] NANCY GATES babysat Minor Victim 1 for [1] ANDREA THOMAS and [2] CORY THOMAS.
>
> 12. Between January 2021 and December 2024, H.S. babysat Minor Victim 1 for [1] ANDREA THOMAS and [2] CORY THOMAS.

(Doc. No. 76 at 3–4.)

Although the Superseding Indictment does not allege the defendants' relationship with Minor Victim 1, the defendants' motion asserts that Minor Victim 1 is the biological son of defendant Cory Thomas and the adopted son of Andrea Thomas and that neither Cory's nor Andrea's parental rights have ever been terminated. (Doc. No. 57 at 3–4.) In addition, the motion asserts that Minor Victim 1 is the stepbrother of defendant Christian Smith and the grandson of defendant Nancy Gates. (*Id.* at 5.) The government concedes that Andrea Thomas and Cory Thomas are Minor Victim 1's adoptive mother and biological father, respectively, and that "Nancy [Gates] is the mother of Andrea Thomas and the grandmother of Christian Smith. Christian Smith is the biological son of Andrea Thomas and stepson of Cory Thomas." (Doc. No. 83 at 4 n.1)

## II. LEGAL STANDARD

Rule 12(b)(1) provides for a Defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim P. 12(b)(1). Moreover, under Rule 12(b)(3), certain "defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits," including challenges based on the sufficiency of the indictment for "failure to state an offense." Fed. R. Civ. P. 12(b)(3)(B)(v).

Moreover, the court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." *Id.* at 665; *see also United States v. Vertz*, 40 F. App'x 69, 71 (6th Cir. 2002) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the [c]ourt is reviewing a question of law, not fact"); *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997) ("Courts usually say that a motion to dismiss is 'capable of determination' before trial if it involves questions of law instead of questions of fact on the merits of criminal liability.").

## III. THE MOTION TO DISMISS

### A. Count Three

#### *1. The Parties' Arguments*

The defendants raise several arguments in support of dismissal of Count Three, either partially or in its entirety. First, they assert that Count Three is "fatally flawed" as to Andrea

Thomas and Cory Thomas, because they are Minor Victim 1's parents and, as such, immune from prosecution under § 1201 altogether, both from any substantive charge of kidnapping and from a charge of conspiracy to kidnap. Second, they argue that the court should apply an "expansive interpretation" of the term "parent" to conclude that defendants Smith and Gates, who are alleged to have acted with the consent of Minor Victim 1's parents, also are immune from prosecution under § 1201.

In its Response, the government first argues that the defendants' motion depends on facts not alleged within the four corners of the Superseding Indictment—namely, the relationships between the defendants and Minor Victim 1—and, therefore, that the court should deny the motion. The government also argues that "the parental exception is an affirmative defense to the substantive offense of kidnapping," and "whether the Defendants are or are not parents of Minor Victim 1 or stood in the shoes of the parents . . . are evidentiary issues for the trier of fact to be determined upon a trial of the merits." (Doc. No. 83 at 4.) Confusingly, however, as set forth above, the government also concedes that Andrea Thomas and Cory Thomas are Minor Victim 1's adopted mother and biological father, respectively, and that "Nancy [Gates] is the mother of Andrea Thomas and the grandmother of Christian Smith. Christian Smith is the biological son of Andrea Thomas and stepson of Cory Thomas." (*Id.* at 4 n.1)

More substantively, the government also contends that the parents, even though they cannot be convicted on the substantive offense of kidnapping their own minor child, under 18 U.S.C. § 1201(a), can commit the offense of conspiracy to engage in kidnapping. Further, the government argues that, even if Andrea Thomas and Cory Thomas cannot be convicted of conspiring to kidnap their own child, "Christian Smith and Nancy Gates certainly can commit the offense." (*Id.* at 9.) Moreover, the government contends, even if the exemption extended to family

members acting with the parents' consent, the question of whether Smith and Gates exceeded the scope of any such consent is a question of fact that cannot be resolved on a motion to dismiss. (*Id.* at 12.)

In their Reply, the defendants argue that the parental exemption under § 1201 is a question of immunity, not merely an affirmative defense, and as such must be resolved before trial. While conceding that Nancy Gates' and Christian Smith's claims of immunity are not as clear as those of the parents, the defendants argue that they should still be resolved prior to trial, even if they do require the court to engage in fact-finding. They continue to argue, at great length, that a finding that parents could be convicted of conspiring to kidnap when they cannot be convicted of substantive kidnapping under the statute is illogical and that Congress never intended for parents to be prosecuted, or prosecutable, under any portion of § 1201. They also seek to distinguish the cases cited by the government, in which the Supreme Court held that individuals who could not be convicted of substantive violations of the Hobbs Act or Mann Act could be convicted of conspiring to violate those statutes.

The defendants have also filed a Joint Memorandum of Supplemental Authority, arguing that the Tenth Circuit's very recent opinion, United States v. Wahhaj, No. 23-2168, --- F.4th ----, 2026 WL 2998135 (10th Cir. Oct. 6, 2026), lends further support to their argument that the parents cannot be liable for conspiracy to kidnap and that, if the parents' conduct was not unlawful, then the other two defendants' conduct cannot be unlawful either. (Doc. No. 113.)

2. *The Text of 18 U.S.C. § 1201*

Section 1201 states, as potentially relevant here:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the*

*case of a minor by the parent thereof*, . . .[2] shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

. . . .

(c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

(d) Whoever attempts to violate subsection (a) shall be punished by imprisonment for not more than twenty years.

. . . .

(g) Special Rule for Certain Offenses Involving Children.--

(1) To whom applicable.--If--

(A) the victim of an offense under this section has not attained the age of eighteen years; and

(B) the offender--

(i) has attained such age; and

(ii) is not--

(I) a parent;

(II) a grandparent;

[2] The omitted portions of the statute establish or otherwise refer to the basis for the exercise of federal jurisdiction over kidnapping offenses. Prior to 2006, the federal offense of kidnapping only applied if the victim was transported in interstate commerce. With the passage of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1)), the statute applies when "the offender travels in interstate or foreign commerce or *uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense*." 18 U.S.C. § 1201(a)(1) (emphasis added). As the Sixth Circuit has recognized, "the additional language expanded federal jurisdiction to reach kidnappings in which . . . facilities of interstate commerce were used to commit the crime, even when the physical kidnapping occurred within the borders of a single state." *United States v. Small*, 988 F.3d 241, 251 (6th Cir. 2021); *see also United States v. Windham*, 53 F.4th 1006, 1012–13 (6th Cir. 2022) (recognizing that cars and cell phones are instrumentalities of interstate commerce and that, "[w]hen a car or a cell phone is used 'in committing or in furtherance of' a kidnapping for ransom, reward, or otherwise, the federal kidnapping statute applies").

(III) a brother;

(IV) a sister;

(V) an aunt;

(VI) an uncle; or

(VII) an individual having legal custody of the victim;

the sentence under this section for such offense shall include imprisonment for not less than 20 years.

(h) As used in this section, the term "parent" does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order.

18 U.S.C. § 1201 (emphasis added).

The federal kidnapping statute was originally passed in 1932 "as a consequence of the kidnaping of the son of the Charles Lindberghs, [and] was limited to cases of kidnaping involving interstate commerce in which the victim was held 'for reward or ransom.'" *United States v. Boettcher*, 780 F.2d 435, 436 (4th Cir. 1985) (quoting Act of June 22, 1932, Pub. L. No. 72-189, 47 Stat. 326).[3] The original version of the statute, as quoted in *Boettcher*, consisted of a single paragraph that encompassed substantive, attempt, and aiding-and-abetting offenses and did not include a specific parental exemption. However, "[t]he obvious purpose" of restricting the crime to kidnappings "for reward or ransom" "was to eliminate from the statute's coverage the kidnaping, conspiracy to kidnap or aiding and abetting in the kidnaping of a parent of his or her child." *Id.* (citing remarks made during the House debate on the proposed legislation, 75 Cong. Rec. 13,296 (1932)).

Two years later, in 1934, the statute was amended to encompass kidnapping "for reward or ransom *or otherwise*, except, in the case of a minor, by a parent thereof." *Gooch v. United States,*

[3] At some point in the last 50 years, the preferred spelling became "kidnapping/kidnapped."

297 U.S. 124, 126 (1936) (emphasis added) (quoting Act of May 18, 1934, ch. 301, 48 Stat. 781, 8 U.S.C. § 408a). "[T]he manifest purpose of the exception was to immunize from the federal crime of kidnaping a parent who abducted his or her own child." *Boettcher*, 780 F.2d at 437 (citing *Gooch*, 297 U.S. at 128; *Brooks v. United States*, 199 F.2d 33, 337 (4th Cir. 1952)).

As detailed in *Boettcher*, the statute was amended again in 1948 and recodified as 18 U.S.C. § 1201. *Id.* at 437. This version omitted the "prohibition against prosecution of the parent for aiding and abetting or causing the kidnaping of his or her minor child," but the Reviser's Notes to the amendment "make clear that '[r]eference to persons aiding, abetting or causing was omitted as unnecessary because such persons are made principals by section 22 of this title [18 U.S.C. § 2].'" *Id.* In other words, according to the Fourth Circuit, "the revision of the statute was not intended to and did not abrogate the parental exemption for the offense of conspiring, aiding or abetting kidnaping of a minor child. On the contrary, the statute's reference to aiding and abetting was omitted in the revision solely as a housekeeping measure to avoid repetitious code sections." *Id.*

The precise issue in *Boettcher* was whether "the immunity under 18 U.S.C. § 1201(a) (1983)[4] in favor of a parent kidnaping his or her own minor child, extend[s] to aiding and abetting by the parent in such kidnaping or in his or her *participation in a conspiracy to kidnap the child*." *Boettcher*, 780 F.2d at 436 (emphasis added). In light of its review of the legislative history of the statute, as set forth above, the Fourth Circuit in *Boettcher* held unequivocally that a mother charged with conspiring to kidnap her own child (from the biological father) was immune from the charge, just as the father was immune from the substantive charge of kidnapping the child (from the mother). *Id.* at 437.

---

[4] While § 1201 has undergone several amendments since 1948, none appears to have substantively modified the provisions at issue here, except perhaps the addition of subsection (g) in 1990. Pub. L. 101-647, Nov. 29, 1990, 104 Stat 4789.

*3. Whether the Parents Can Be Convicted of Conspiracy to Kidnap*

Although there is admittedly little precedent in this area, and none from the Sixth Circuit, the court is unaware of *any* case in which a parent has been convicted under § 1201(c) of conspiring to kidnap his or her own child. As noted above, the Tenth Circuit has very recently addressed the interpretation of § 1201(c). In the course of reversing the kidnapping and conspiracy to kidnap convictions of the non-parent defendants, the court also observed that government had not charged the father of the child, who was also involved in the incident, with either kidnapping or conspiracy to kidnap (though he faced other charges), based on the parental exemption. *Wahhaj*, 2026 WL 2998135, at *1; *see also United States v. Leveille*, 671 F. Supp. 3d 1266, 1268 (D.N.M. 2023) ("Because of the parental exception, Mr. Wahhaj, John Doe's father, was not charged—or even mentioned—in Counts 6 or 7 [for conspiracy to kidnap and substantive kidnapping] of the Superseding Indictment."); *aff'd on other grounds*, *Wahhaj*, 2026 WL 2998135, at *7. In an earlier case, the Tenth Circuit has also held that, because a parent cannot be convicted of kidnapping under § 1201(a), she cannot be convicted of threatening to kidnap under 18 U.S.C. § 875(b). *United States v. Mobley*, 971 F.3d 1187, 1205 (10th Cir. 2020).

It would also seem fairly obvious that a parent who is exempt from criminal liability for kidnapping (or threatening to kidnap) her own child cannot be convicted of *attempting* to kidnap the child. But 18 U.S.C. § 1201(d), which covers attempt, like the conspiracy provision in subsection (c), does not expressly incorporate the parental exemption. The court nonetheless finds, for the reasons set forth above and discussed in *Boettcher*, that the legislative history of § 1201 indicates a clear intent to exempt parents from liability for kidnapping, attempting to kidnap, aiding and abetting kidnapping, or conspiring to kidnap their own minor child. The rule of lenity, moreover, favors this conclusion.

Although the government argues that the defendants' relationship with Minor Victim 1 is not on the face of the Superseding Indictment, the government also concedes that Andrea Thomas and Cory Thomas are Minor Victim 1's parents. In other words, the nature of the relationship between Minor Victim 1 and the Thomases is not a disputed fact that must be resolved by a jury.[5] And the court holds as a matter of law that the parents of a minor child cannot be convicted of conspiring to kidnap their own child, any more than they can be convicted of kidnapping their own child, under § 1201.

The court does not reach the question of whether the issue raised by the defendants is one of immunity or simply an affirmative defense, because resolution of that question is not necessary in order for the court to hold that the Superseding Indictment fails as a matter of law on the undisputed facts to state a criminal offense against Andrea Thomas and Cory Thomas. Count Three of the Superseding Indictment must be dismissed as to them.

*4. The Validity of Count Three as to Nancy Gates and Christian Smith*

The Superseding Indictment in this case contains essentially no facts to support the conspiracy charge against Gates and Smith. Regardless, as explained below, the court finds that it cannot, at this juncture, dismiss the claim as to Gates and Smith.

The Sixth Circuit has repeatedly stated that an indictment is "sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *United States v. Rankin*, 929 F.3d 399, 404–05 (6th Cir. 2019) (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005)). The

[5] The government does not contend that the fact that Andrea Thomas is the child's adopted mother rather than his biological mother makes a difference, and it does not contend that Andrea or Cory's parental rights have been terminated, so as to remove them from the scope of the exemption, under § 1201(h).

Superseding Indictment alleges only that the defendants "knowingly and willfully conspired and agreed together, and with others known and unknown to the grand jury, to commit the offense of Kidnapping," in violation of 18 U.S.C. § 1201(c). It then lists "overt acts" that, as noted, appear to be geared toward satisfying the interstate commerce element of the crime. It does not actually allege facts showing that the defendants conspired to (1) "seize[], confine[],[or] kidnap[]" Minor Victim 1 and (2) "hold[] [him] for ransom or reward or otherwise." 18 U.S.C. § 1201(a).

The defendants have not challenged Count Three on that ground, however. Instead, Gates and Smith argue that (1) as surrogate parents under the expansive definition of "parent" accorded the statute by the Eighth and Tenth Circuits, they are exempt from prosecution (Doc. No. 56 at 1–2, 12 (citing *United States v. Brown*, 330 F.3d 1073 (8th Cir. 2003); *United States v. Floyd*, 81 F.3d 1517 (10th Cir. 1996));[6] and (2) insofar as Gates and Smith are alleged to have conspired with the parents, it is clear that they "acted with the consent of the victim's parents" such that the "statutory exemption applies to them" (*id.* at 13).

Neither Gates nor Smith is a parent of Minor Victim 1, and the defendants provide no binding or persuasive law from the Sixth Circuit for extending § 1201's parental exemption to non-parents. Even if the court were inclined to extend the definition of "parent" as requested by the defendants, the facts in the Superseding Indictment (such as they are) do not unequivocally establish that Gates and Smith acted as surrogate parents or show whether they exceeded the scope

[6] In these cases, the Eighth and Tenth Circuits recognized that the parental exception under § 1201 may extend to "anyone who stands in a position equivalent to that of a parent." *Brown*, 330 F.3d at 1079; *see also Floyd*, 81 F.3d at 1523. Both declined to extend the exemption to the defendant in those cases, in *Brown* because the defendant had far exceeded the scope of mother's limited consent and engaged in conduct (including sexually abusing the minor) that was "[b]y no stretch of the imagination . . . the conduct of a surrogate parent." *Brown*, 330 F.3d at 1079. In *Floyd*, the Tenth Circuit found that the defendant's status as a stepparent terminated "when he voluntarily relinquished custody" of the child after the death of the biological mother. *Floyd*, 81 F.3d at 1523–24.

of any such surrogacy. As for the defendants' argument that Gates and Smith cannot be convicted of conspiring with the parents to "kidnap" the parents' minor child because they acted with the parents' consent, there are no facts in the Superseding Indictment or the otherwise undisputed record regarding the existence or scope of such consent.

Moreover, caselaw cited by the government suggests that "an agreement to commit an offense may be criminal, though its purpose is to do what some of the conspirators may be free to do alone." *Gebardi v. United States*, 287 U.S. 112, 120 (1932) (citing *United States v. Holte*, 236 U.S. 140, 144 (1915); *see also Ocasio*, 578 U.S. at 292 ("In order to establish the existence of a conspiracy to violate the Hobbs Act, the Government has no obligation to demonstrate that each conspirator agreed personally to commit—or was even capable of committing—the substantive offense of Hobbs Act extortion. It is sufficient to prove that the conspirators agreed that the underlying crime be committed by a member of the conspiracy who was capable of committing it.").

Finally, although the defendants' Joint Memorandum now argues, relying on *Wahhaj*, that the government cannot show that Gates and Smith acted unlawfully if the parents did not act unlawfully, *Wahhaj* went to trial, and the Tenth Circuit reached its holding at least in part based on the facts (or absence of facts) presented at trial. The facts in this case have not been developed, and neither party has directly addressed the elements of the offense or what facts would be required to support those elements, in particular the elements of the substantive offense of kidnapping, as those terms are defined by § 1201(a), for the purpose of a conspiracy to achieve that objective. *See Wahhaj*, 2026 WL 2998135, at *29–31 (concluding that the "unlawfully kidnaps" element "requires looking to whether the conduct is contrary to law or unauthorized by law" and defining the "holding" element as requiring "an unlawful physical or mental restraint for an appreciable

period against the [victim's] will" (first quoting *Chatwin v. United States*, 326 U.S. 455, 460 (1946); and then quoting *United States v. Davey*, 151 F.4th 1249, 1259 (10th Cir. 2025))).

Because the facts on which the government intends to rely to prove its case are unclear, and the law in this area is unsettled, the court cannot conclude as a matter of law on the undisputed facts that Count Three of the Superseding Indictment must be dismissed as to Gates and Smith.

**B. The Applicability of 18 U.S.C. § 3559(f)(2)**

Section 3559(f)(2) provides for a mandatory minimum sentence of 25 years for the kidnapping of a minor. The statute states, in relevant part, that any

> person who is convicted of a Federal offense that is a crime of violence against the person of an individual who has not attained the age of 18 years shall, . . . if the crime of violence is kidnapping (as defined in section 1201) . . . , be imprisoned for life or any term of years not less than 25 . . . .

18 U.S.C. § 3559(f)(2).

The defendants contend that, assuming any of them can be charged (or convicted) of conspiring to kidnap, no mandatory minimum sentence applies and Count Three's reference to § 3559(f)(2) is inapplicable and should be stricken, for two reasons. First, they argue, the provision contains a mandatory minimum for the substantive offense of *kidnapping*, but a conviction under Count Three would be for *conspiracy* to kidnap, not substantive kidnapping; and (2) conspiracy to kidnap under 18 U.S.C. § 1201(c) is not a crime of violence, as even a substantive charge of kidnapping does not qualify as a crime of violence.[7]

The government's Response argues only that the defendants are not entitled to a pretrial ruling as to the applicability of a mandatory minimum sentence, because they have not yet been

[7] In the alternative, the defendants proffer a convoluted third argument as to why § 3559(f)(2) cannot apply: they are exempted as family members from the mandatory minimum of 20 years set forth in 18 U.S.C. § 1201(g), and it makes no sense to apply the even longer mandatory minimum under § 3559(f)(2). The court does not reach this argument.

convicted, making their claim for relief unripe. (Doc. No. 83 at 13–14.) Although the government has not located any caselaw addressing, pretrial, the applicability of § 3559(f)(2), it argues that courts have declined to consider analogous pretrial arguments regarding the applicability of the Armed Career Criminal Act ("ACCA") enhancement in 18 U.S.C. § 924(e). (*Id.* at 14 (citing *United States v. Edwards*, No. 1:16-cr-081, 2017 WL 606768, at *2–5 (S.D. Ohio Feb. 15, 2017); *United States v. Williams*, No. CR419-107, 2019 WL 8504704, at *2 (S.D. Ga. Dec. 19, 2019); *United States v. Boxx*, No. 3:19-cr-210, 2022 WL 17251822, at *1 (N.D. Ohio Nov. 28, 2022); *United States v. Taylor*, No. 20-cr-20449, 2022 WL 3447596, at *2 (E.D. Mich. Aug. 17, 2022)).)

The defendants filed a Reply, arguing that (1) the government's cited legal authority is "misplaced and unpersuasive"; (2) if the government is going to analogize § 3559(f)(2) to the ACCA, then the Superseding Indictment fails to "allege the necessary facts/elements" required for application of the mandatory minimum in § 3559(f)(2), under *Erlinger v. United States*, 602 U.S. 821 (2024);[8] and (3) the defendants are entitled to know the legally applicable penalties for Count Three before going to trial, and the government's effort to delay a decision on "this critical legal issue ignores the reality that any defendant weighing his options, benefits, and risks of proceeding to trial will consider the potential penalty," such that postponing resolution of this issue has the effect of "improperly tilting the scales when a defendant is deciding what course to take." (Doc. No. 103 at 30, 33, 39.)

In its Surreply, the government points out (and the court agrees) that the reference to "Minor Victim 1" in the Superseding Indictment is sufficient to allege that the victim was under

[8] Insofar as the defendants also argue that the mandatory minimum in § 1201(g) does not apply, the government's Surreply points out that it has never contended that § 1201(g) applies, and the Superseding Indictment does not cite or rely on that provision. The court, therefore, will not address the applicability of § 1201(g).

the age of 18 at the time of the alleged offenses. The government also contends that the question of whether a particular crime is a "crime of violence" is a question of law to be resolved by the court, not a fact to be resolved by the jury. (Doc. No. 107 at 2.) However, analogizing to the ACCA, the government also continues to maintain that the defendants are not entitled to a pretrial resolution of that legal issue. (*Id.* at 4–5.)

Of the four cases cited by the government in support of its position, two indeed held that determining whether the ACCA would apply at sentencing was premature and that the issue should be considered only after a conviction was returned. *See Edwards*, 2017 WL 606768, at *4; *Williams*, 2019 WL 8504704, at *2. In the two more recent cases the government cites, however, the courts actually considered the issue but held as a matter of law that the ACCA applied. *See Boxx*, 2022 WL 17251822, at *1 (denying the defendant's motion for a ruling that the "mandatory minimum sentencing provision" of the ACCA did *not* apply and instead holding that the defendant's previous state drug convictions qualified as a matter of law as predicate offenses); *Taylor*, 2022 WL 3447596, at *1 (same). Other courts have also found that a pretrial determination of the applicability of the ACCA may be ripe when the issue is purely a legal one. *See, e.g.*, *United States v. Anderson*, No. 7:24-cr-00219 (PMH), 2025 WL 1784902, at *1 (S.D.N.Y. June 27, 2025) (citing *United States v. Jackson*, No. 13-CR-00142, 2013 WL 4744828 (S.D.N.Y. Sept. 14, 2013)).

In evaluating a claim to determine whether it is ripe for judicial review, the court is to consider both "'the fitness of the issues for judicial decision' and 'the hardship of withholding court consideration.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). This court finds that the issue of the applicability of § 3559(f)(2) is fit for judicial review because it is a "purely legal [issue], and will not be clarified by further factual development." *Jackson*, 2013 WL

4744828, at *2 (quoting *Thomas v. Union Carbide Agric. Prods.*, 473 U.S. 568, 581 (1985)). As for hardship, the government does not claim hardship and instead argues that the defendants will suffer no hardship in awaiting a determination because they are on notice of the government's position, can make their own determination as to the applicability of the statute, and may not be convicted at all of the charged crime.

The court finds that "[d]eclining to address the issue . . . would lead to uncertainty creat[ing] a considerable hardship for the defendant[s] because of the disparity between the possible range of sentences that might apply." *Id.* (internal quotation marks and citations omitted). And, on the other hand, because the issue is purely a legal one, "[n]othing would be gained by postponing a decision." *Id.* (quoting *Thomas*, 473 U.S. at 582).

The government has conceded in at least two recent cases that kidnapping and conspiracy to kidnap in violation of 18 U.S.C. § 1201 are not "crime[s] of violence." *See, e.g.*, *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019) (kidnapping); *In re Hernandez*, No. 20-5737, 2020 U.S. App. LEXIS 35826 (6th Cir. Nov. 13, 2020) (conspiracy to kidnap). While the Sixth Circuit has not expressly held as much in a contested case, many other courts have done so.[9]

---

[9] Prior to the Supreme Court's determination that the "residual clauses" in 18 U.S.C. §§ 924(e)(2)(B)(i) and 924(c)(c)(3)(B) (and similar clauses in other statutes) are void for vagueness, *see, e.g.*, *Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Davis*, 588 U.S. 445, 470 (2019), several courts had held that kidnapping and conspiracy to kidnap are crimes of violence. *See, e.g.*, *United States v. Green*, 521 F.3d 939, 932–33 (8th Cir. 2008) ("Without question, kidnapping is a crime of violence for purposes of § 924(c)."). The defendant in *Green*, however, has now been granted habeas relief, effectively reversing that conclusion. *United States v. Green*, No. 8:06CR191, 2020 WL 3489519, at *2 (D. Neb. June 26, 2020) ("In light of the *Davis* case and the Government's concessions, the Court finds Green's conviction [under § 924(c) predicated on kidnapping as the underlying crime of violence] must be vacated."). Several circuit courts, in light of *Johnson* and *Davis*, have recognized that kidnapping and conspiracy to kidnap do not qualify as crimes of violence under § 924(c) or § 924(e). *See, e.g.*, *United States v. Minaya*, 841 F. App'x 301, 303 (2d Cir. 2021) (recognizing that, in light of *Davis*, "conspiracy to commit federal kidnapping seems unlikely to satisfy the relevant definition of a crime of violence"); *United States v. Walker*, 934 F. 3d 375, 379 (4th Cir. 2019) ("[B]ecause both requirements of 18 U.S.C. § 1201(a)

It is unclear why the government resists that conclusion now, but, in light of *Johnson*, *Davis*, and the opinions cited in Note 9, it is clear that conspiracy to kidnap under 18 U.S.C. § 1201(c), as a matter of law, does not qualify as a crime of violence for purposes of sentencing under § 3559(f)(2). Secondarily, as the defendants also argue, § 3559(f)(2) does not even identify conspiracy to kidnap as a crime of violence; it refers only to substantive kidnapping as a (potential) crime of violence subject to a 20-year mandatory minimum sentence. For this reason, too, it is clear that § 3559(f)(2) does not apply to the charge in Count Three of the Superseding Indictment.

The defendants' motion will be granted, insofar as it seeks to strike reference to 18 U.S.C. § 3559(f)(2), for failure to state an offense. Fed. R. Civ. P. 12(b)(3)(B)(v).

## IV. CONCLUSION

As set forth herein, the defendants' Motion to Dismiss (Doc. No. 57) is **GRANTED IN PART AND DENIED IN PART**. Count Three of the Superseding Indictment is **DISMISSED** as to defendants Andrea Thomas and Cory Thomas, for failure to state an offense, and **DENIED** with respect to defendants Nancy Gates and Christian Smith. The motion is further **GRANTED** with respect to the reference to a violation of 18 U.S.C. § 3559(f)(2), and that reference is **STRICKEN** as inapplicable as a matter of law.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

may be committed without violence, kidnapping clearly does not categorically qualify as a crime of violence under [§ 924(c)]."); *United States v. Brazier*, 933 F. 3d 796, 801 (7th Cir. 2019) (reversing § 924(c) convictions and remanding for resentencing because kidnapping does not categorically satisfy § 924(c)'s elements clause); *United States v. Khamnivong*, 779 F. App'x 482, 484 (9th Cir. 2019) (reversing defendant's § 924(c) conviction because "kidnapping is not a crime of violence under the remaining force clause"); *United States v. Ford*, No. 17-1122, 2019 WL 5491549 (10th Cir. Oct. 25, 2019) (reversing § 924(c) conviction predicated on kidnapping based on government's confession of error).